U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
MAR 26 2010
CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| Hilario Cardenas, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 4:09-CV-690-A |
| | § | |
| RICK THALER, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Hilario Cardenas, a state prisoner currently incarcerated in Tennessee Colony, Texas, against Rick Thaler, Director of the Texas Department of Criminal Justice, Correctional Institutions Division, respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be denied.

### I. Factual and Procedural History

In July 2004, petitioner was charged with conspiracy to commit capital murder in the shooting deaths of Suzanna and Rick Wamsley in Tarrant County, Texas, Case No. 0928126D. (State Habeas R. at

80) Although petitioner was not present when the murders occurred, the state alleged in the indictment that petitioner provided the gun used to shoot the Wamsleys. The state offered to waive the death penalty and reduce the charges to conspiracy to commit capital murder, in exchange for petitioner's cooperation and testimony against his codefendants, Andrew Wamsley, Chelsea Richardson and Susana Toledano. (State Habeas R. at 80) On May 1, 2006, petitioner was given and signed written plea admonishments and judicially confessed to the offense, after which he entered an open plea of guilty to the trial court. (*Id.* at 82-87) The trial court accepted his plea and deferred ruling on punishment pending a presentence investigation report (PSI). On May 26, 2006, following a punishment hearing, the trial court found petitioner guilty of the offense and assessed his punishment at fifty years' confinement. (*Id.* at 89)

On appeal, the Second District Court of Appeals of Texas affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review. *Cardenas v. State*, No. 2-06-181-CR, slip op. (Tex. App.-Fort Worth June 7, 2007); *Cardenas v. State*, PDR No. 1163-07 (Tex Crim. App. Oct. 3, 2007). Petitioner did not seek writ of certiorari. (Petition at 3) Petitioner also sought postconviction

state habeas relief, to no avail. *Ex parte Cardenas*, Appl. No. WR-72,243-01, at cover. This federal petition was filed on November 12, 2009.

Petitioner claims his constitutional rights were violated because (1) his guilty plea was induced and involuntary, (2) the trial court erred by not appointing an interpreter, and (3) he received ineffective assistance of trial counsel. (Petition at 7-8b)

## II. Rule 5 Statement

Respondent believes that the petition is neither barred by limitations nor subject to the successive petition bar, however, he asserts petitioner has failed to exhaust his state remedies as to one or more of the claims presented as required by 28 U.S.C. § 2254(b). (Resp't Answer at 3)

## III. Discussion

### Legal Standard and for Granting Habeas Corpus Relief

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The statute further requires that federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, as here, it is an adjudication on the merits, which is

4

entitled to this presumption. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997.)

### 1. *Voluntariness of Petitioner's Guilty Plea*

Petitioner claims his guilty plea was rendered involuntary as a result of (1) the state's breach of the plea agreement to present a "long PSI report" at sentencing, (2) the trial court's failure to read the indictment to him or have it interpreted in Spanish, and (3) the trial court's failure to inform him the state would have to prove the element of intent if he went to trial. (Pet'r Memorandum of Law at 3-9)

In response to petitioner's allegations, counsel testified by affidavit that he conveyed the state's plea offers to petitioner and relayed petitioner's counteroffers to the state. When the state would not agree to what petitioner requested, petitioner decided to plea open to the judge for punishment. Counsel further testified that petitioner was proficient in English, that petitioner never requested an interpreter, that it was not necessary to have a translator present when he spoke with petitioner, that petitioner took and passed a polygraph examination in English, and that petitioner understood what the judge was telling and explaining to him in court. Counsel stated that he

5

read the indictment to petitioner when he was first indicted and again when petitioner signed the paperwork for the open plea. Finally, counsel testified that petitioner admitted his initial intent to participate in the murders in his statement to the police, knew for approximately a year that his coconspirators were planning to kill the Wamsleys, gave his coconspirators the gun and ammunition used, and knew what his coconspirators were planning to do with the gun. (State Habeas R. at 52-53)

Based on the state court records and counsel's testimony, the state habeas judge, who also presided at petitioner's trial, entered findings, upon which the Texas Court of Criminal Appeals denied relief, refuting petitioner's allegations and concluded there was no plea agreement in the case and there was no evidentiary basis for petitioner's claims that he was unaware of the contents of the indictment, did not understand the elements of the offense, or did not understand and speak English. (State Habeas R. at 56-64, 79)

A guilty plea must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. *Brady v. United States*, 397 U.S. 742, 748 (1970). Before a trial court may accept

a guilty plea, the court must ensure that the defendant is advised of the consequences of his plea and the various constitutional rights that he is waiving by entering such a plea. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). If a challenged guilty plea is knowing, voluntary, and intelligent, it will be upheld on federal habeas review. *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995). Although a defendant's attestation of voluntariness at the time of the plea is not an absolute bar to later contrary contentions, it places a heavy burden upon him. *United States v. Diaz*, 733 F.2d 371, 373-74 (5th Cir. 1979). He must show such a strong degree of misunderstanding, duress, or misrepresentation by the court, prosecutor, or his own counsel that his plea would become a constitutionally inadequate basis for imprisonment. *Id.* (citing *Blackledge v. Allison*, 431 U.S. 63, 75 (1977)).

The state court records in this case do not demonstrate that petitioner's open guilty plea was in any way induced by misunderstanding, coercion, or misrepresentation on the part of the state, the trial court, or his trial counsel. The documentary record reflects there was no plea bargain agreement as to punishment and the agreed recommendation of the state was simply that petitioner would enter an "open plea to judge w/ long PSI," preparation of which was ordered by the trial court. (State Habeas

R. at 81) Further, petitioner executed a judicial confession averring that he had read the indictment or had it read to him. Petitioner entered his guilty plea in open court and was advised by counsel and the trial court of the charge against him, his rights and waivers, and the full range of punishment for the offense. (State Habeas R. at 81-87) Petitioner executed the written plea admonishments in which he waived formal reading of the indictment and acknowledged that he understood the admonishments, that he was aware of the consequences of his plea, and that his plea was "freely and voluntarily entered." See Blackledge, 431 U.S. at 74; Kelley v. Alabama, 636 F.2d 1082, 1084 (5th Cir. 1981). Additionally, petitioner responded affirmatively when asked at the plea hearing whether he understood what he was charged with, his rights and waivers, the full range of punishment, and the consequences of his plea, and he replied in the negative when asked by the court whether his plea was the result of threats or promises of reward. (2 RR at 6-11)

Such representations by a defendant during plea proceedings "carry a strong presumption of verity." Blackledge, 431 U.S. at 74. Without substantiation in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in his pro se petition to be of probative evidentiary value. Ross v.

*Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983). A habeas petitioner's assertion, after the fact, that he was persuaded or coerced into entering a guilty plea is, in and of itself, insufficient to rebut the presumption of regularity of the state court records and the correctness of the state courts' determination of the issue. *See Siao-Pao v. Keane*, 878 F. Supp. 468, 472 (S.D.N.Y. 1995); *Panuccio v. Kelly*, 927 F.2d 106, 109 (2nd Cir. 1991) (a defendant's testimony after the fact suffers from obvious credibility problems); *Babb v. Johnson*, 61 F. Supp. 2d 604, 607 (S.D. Tex. 1999); *Hill*, 210 F.3d at 485; *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994).

### 2. *Spanish Interpreter*

Petitioner claims he and the defense witnesses are Mexican nationals with limited English skills. He asserts he had several rows of witnesses, mostly family members, who were prevented from testifying on his behalf by the trial court's failure to appoint a Spanish interpreter as required by § 57.002 of the Texas Government Code and Texas case law. (Pet'r Memorandum at 9-11)

During the punishment hearing, at petitioner's request, defense counsel called Leo Perez, Cardenas's uncle, to testify, and the following exchange occurred:

> [Defense Counsel]: We're going to try to

> ask you questions that you should be able to understand.
>
> [Prosecutor]: Well, I am going to object, Your Honor, because I don't know if he's going to understand my questions on cross-examination, and I would ask for a translator, which should have been arranged already ahead of time.
>
> [The Court]: This is the first time I was aware of this - - and the witness has asked for a translator. I think that's his concern.
>
> [Defense Counsel]: Just one second, Your Honor.
>
> [The Court]: I think we're going to need somebody besides family members.
>
> [Defense Counsel]: Your Honor, instead of calling him, we would call Cynthia Rodriguez to prevent that problem.
>
> [The Court]: All right. You may step down at this time. . . . And if we encounter a situation where we need a translator, I guess my inquiry would be as to whether one or the other - - one side or the other desires an interpreter who is certified by the court statute. (3 RR at 34-35)

The state habeas court entered findings, upon which the Texas Court of Criminal Appeals denied relief, that the trial court did not make a ruling or deprive petitioner of his right to get a translator because defense counsel and petitioner decided not to call Perez. Given this fact, the state court concluded there was no violation of petitioner's constitutional right to compulsory

process for obtaining witnesses in his favor. (State Habeas R. at 59, 62) Further, the state habeas court found no evidence to support petitioner's claim that he was not proficient in English.

The court agrees petitioner's assertion that he required an interpreter is not supported by the record, which indicates that petitioner did not request an interpreter, always spoke English during attorney/client meetings, and showed sufficient command of the language by responding in English to the trial court's and his attorney's questions during trial. Nothing in the record suggests petitioner's attorney or the trial court were aware or should have been aware that he had difficulty speaking or understanding the English language.

Petitioner has failed to demonstrate the state courts' adjudication of these claims resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law or a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d).

### 3. *Ineffective Assistance of Counsel*

Petitioner claims he received ineffective assistance of counsel at trial because counsel (1) failed to investigate the need

11

for and seek an interpreter for himself and defense witnesses (grounds three and four), (2) failed to object to inaccuracies and omissions in the PSI and move for a continuance to allow time to complete a detailed PSI (grounds five and six), and (3) collaborated with the prosecutor to coerce a confession from him, presenting a conflict of interest (ground seven). Petitioner has abandoned grounds five, six and seven; thus, those grounds are not addressed. (Pet'r Traverse at 9-10)

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI. To prevail on an ineffective assistance claim in the context of a guilty plea, a defendant must demonstrate that his plea was rendered involuntary by showing that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's deficient performance, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 56-59 (1985); *Petitioner v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983); see also *Strickland v. Washington*, 466 U.S. 668, 687 (1984). There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 688.

Petitioner claims counsel failed to investigate and seek an interpreter for him and defense witnesses who wanted to testify on his behalf at the punishment phase but spoke only English. In response to petitioner's allegations, counsel testified at length as follows:

> The Judge allowed Hilario Cardenas' defense counsel to call witnesses to testify on his behalf. My client and I had previously discussed who would be called to testify at the sentencing. We had agreed that the witnesses would be Margaret Cardenas and Cynthia Rodriguez. While the State was asking a witness questions, Hilario Cardenas stated that he wanted to have Leo Perez testify. Mr. Perez understood some English, but was nervous and afraid that he would not be able to understand everything. While the State was objecting to Mr. Perez testifying without the aid of an interpreter, I had another discussion with my client. I asked him why he suddenly wanted Mr. Perez to testify since we had already discussed potential witnesses. From my discussions with Mr. Perez at my office, there was nothing he could testify to that Margaret Cardenas or Cynthia Rodriguez would not be able to say in their testimony. After that discussion, Hilario Cardenas agreed and I called the next witness to the stand which was Cynthia Rodriguez. There was not a translator present at the sentencing because we had only planned on calling Margaret Cardenas and Cynthia Rodriguez. Both of these witnesses understood and spoke English. On May 24, 2008, I had a lengthy discussion with Hilario Cardenas. On May 25, 2008, I had the same discussion with his family. All parties agreed on who would be most effective to testify on my client's behalf. Hilario Cardenas spoke and understood English as is reflected by his statements and transcript. He did not need an interpreter. One of Hilario Cardenas' brother translated for their father at the sentencing hearing.

. . .

13

As stated previously, I met with Hilario Cardenas' family numerous times throughout the case. I also spoke with his uncle, his wife and his sister-in-law. There were several people that came by my office and dropped off letters for me to give to the investigator preparing the PSI. During that time period, my office employed a Spanish speaking female on a part-time basis. She was fluent in Spanish and English. She has provided translation services for my office numerous times over the past ten (10) years. She would interpret for me when anyone came into my office who spoke only Spanish or when Spanish speaking people would telephone my office. Her name is Maria Rodriguez. She was present at the first meeting I had with Juan Cardenas, Leo Perez and Cynthia Rodriguez. Maria Rodriguez and Cynthia Rodriguez were translating for my client's father and for his uncle when necessary. Maria Rodriguez had accepted several telephone calls on my behalf during this case in which she translated for me with his family. The Judge stated "on the record" that it appeared as though my client had 3 or 4 rows of witnesses for the sentencing hearing. The courtroom was full with other individuals not associated with this case who sat behind Hilario Cardenas because there was nowhere else to sit. The only people there on my client['s] behalf was Juan Cardenas, Leo Perez, Joshua Cardenas, Jacob Cardenas, Mike Cardenas, Margaret Cardenas and Cynthia Rodriguez. In Hilario Cardenas['s] paperwork, he submitted an affidavit from Heidi Gomez Cardenas stating that she was his sister. She stated that she was present at the sentencing and wanted to testify on his behalf. I never meet(sic) this female in Court. I have reviewed all of my notes in the file and no one, including Hilario Cardenas' father or brothers, ever mentioned that he had a sister. The only siblings that were ever mentioned to me were Hilario Cardenas' brothers. I spoke with every potential witness that my client had provided whether they spoke English or Spanish. The witnesses were contacted and interviewed by me as the names became available to my office. They were questioned as to what information each one of them knew about his case. Margaret Cardenas and Cynthia Rodriguez knew the most about his case. The other family members were very nervous and did not want to testify. They

14

stated that they did not feel comfortable testifying and that they could not provide any other information than what Margaret Cardenas and Cynthia Rodriguez had already provided. The only mitigating factor the family could provide was that Hilario Cardenas was a hard worker, put his family first, had a small daughter and that his personality and conduct had changed once he met Andrew Wamsley, Chelsea Richardson and Susan Toledano. They were unable to provide anything further regarding his background that would be of any assistance. I continuously questioned the family members throughout the case, but they were unable to provide me with anything that would have been useful in the punishment hearing. (State Habeas R. at 54-55)

Based largely on counsel's testimony, the state habeas court entered findings, upon which the Texas Court of Criminal Appeals denied relief, that because counsel did not know petitioner wanted Leo Perez to testify prior to the hearing, counsel did not secure a translator. The court further determined that Leo Perez could not provide information that the other two witnesses could not provide and that petitioner had failed to present evidence as to what Perez would have testified to or names of other witnesses that he wanted to testify but were unable to because an interpreter was not provided. (State Habeas R. at 59) Based on its findings, and applying the *Strickland* standard, the state court concluded petitioner has failed to prove ineffective assistance of counsel or a reasonable probability that but for the alleged misconduct, the result of the proceeding would have been different. Clearly, the

state court determined counsel's testimony on the issue to be credible. Such credibility determinations are entitled to a presumption of correctness. *See Richards v. Quarterman*, 566 F.3d 553, 563 (5th Cir. 2009).

The state courts' decision is not contrary to or involve an unreasonable application of *Strickland* in light of the record as a whole and is entitled to deference and the presumption of correctness.

For the reasons discussed herein,

The court ORDERS the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied.

Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court, and 28 U.S.C. § 2253(c), for the reasons discussed herein, the court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a substantial showing of the denial of a constitutional right.

SIGNED March 26, 2010.

JOHN McBRYDE
United States District Judge